

FILED

2023 Mar-06  AM 11:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | |
| **vs.** | **)** | **Civil Action No. 5:18-cv-1055-CLS** |
| | **)** | |
| **RANDY HAMES and HAMES** | **)** | |
| **MARINA d/b/a HAMES MARINA** | **)** | |
| **AND MOBILE HOME PARK,** | **)** | |
| | **)** | |
| **Defendants.** | **)** | |

| | | |
|---|---|---|
| **TOMEKA BARTLETT and** | **)** | |
| **KAYLA CARREKER,** | **)** | |
| | **)** | |
| **Plaintiffs,** | **)** | |
| | **)** | |
| **vs.** | **)** | **Civil Action No. 5:18-cv-1096-CLS** |
| | **)** | |
| **RANDY ALLAN HAMES, *et al.,*** | **)** | |
| | **)** | |
| **Defendants.** | **)** | |

**MEMORANDUM OPINION**

This opinion addresses motions filed by the parties in the first of these
consolidated cases: *i.e.*, *United States vs. Randy Hames and Hames Marina, d/b/a
Hames Marina and Mobile Home Park*, Civil Action No. 5:18-cv-1055-CLS. The
government charges that defendant Randy Hames subjected female tenants of
defendants' rental properties to discriminatory housing practices in violation of Title

VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601 *et seq*. ("Fair Housing Act"). Defendants are accused of soliciting sexual favors in exchange for rent or other housing benefits.[1]

Randy Hames and Hames Marina, L.L.C., doing business as Hames Marina and Mobile Home Park ("Hames Marina"), are alleged to have owned and managed "at least 15 rental mobile homes" in Cullman County, Alabama,[2] from September 27, 1996, until on or about October 18, 2018, when Hames Marina was dissolved.[3] During that period, Randy Hames allegedly

> controlled all aspects of the management of the subject property including, but not limited to, recruiting prospective tenants, accepting or rejecting prospective tenants, setting rates for rent and security deposits, collecting rent, accepting requests for repairs, and evicting tenants.
>
> 10.  Since at least 2011, Defendant [Randy] Hames has subjected female tenants of the Defendants' residential rental property to discrimination on the basis of sex, including severe, pervasive, and unwelcome sexual harassment, on multiple occasions. Such conduct has included, but is not limited to:

---

[1] The government's case was consolidated with an action based upon similar facts that was subsequently filed by two private plaintiffs:  *i.e., Tomeka Bartlett and Kayla Carreker vs. Randy Allan Hames, Hames Marina, L.L.C., Christy Hames Dolbeer, Mary Catherine Hames, Jessica Hames Penner, Angela Hames Sahurie, Miranda Hames Self, and Marina Management Company, L.L.C.*, Civil Action No. 5:18-cv-1096-CLS.  *See* doc. no. 21 (Government's Motion to Consolidate Cases) and doc. no.  25 (Order granting motion).  **NOTA BENE**: All document numbers cited in this opinion refer to those assigned by the court's Electronic Case Filing system ("ECF") to pleadings docketed in the present action, the lead case.

[2] *See* doc. no. 1 (Complaint)*,* ¶¶ 4-7.

[3] *See* doc. no. 129-6 (Business Entity Record, Alabama Secretary of State).

a.   Demanding that female tenants engage in, or pressuring them to engage in oral sex or other sexual acts with him [in order] to obtain or keep rental housing;

b.   Subjecting female tenants to unwelcome sexual contact, including but not limited to hugging female tenants, touching (or attempting to touch) female tenants' bodies, and rubbing his body against female tenants' bodies;

c.   Offering to grant tangible housing benefits — such as reducing or excusing rent payments, late payments, or deposit amounts — in exchange for engaging in sexual acts with him;

d.   Making intrusive, unannounced visits to female tenants' homes for no apparent legitimate purposes and to further his sexual advances;

e.   Menacing female tenants by repeatedly parking for extended periods of time in front of their homes when he had no apparent legitimate reason to do so;

f.   Making unwelcome sexual comments, propositions, and sexual advances to female tenants; and

g.   Taking adverse housing actions, such as evicting or refusing to make repairs, or threatening to take such actions, against female tenants who have objected to his unwelcome sexual advances and/or refused to engage in sexual acts with him.

11.   For instance, in or around December 2017, Defendant Hames requested that a female tenant engage in oral sexual acts with him in exchange for rent.  In the presence of her toddler, Defendant Hames attempted to put his arm around this woman and to place his hand on her upper thigh.  After she rejected these advances, the Defendants placed an eviction notice on her door.  While this female tenant was residing on Defendants' property, Defendant Hames also repeatedly made

3

inappropriate sexual comments to her and entered her home without permission on several occasions, including when she was showering and sleeping.  Defendant Hames also frequently parked in the driveway of her home and watched her through the windows for extended periods of time for no apparent legitimate purpose.

12.  Additionally, in or around November 2017, Defendant Hames subjected another female tenant to unwelcome sexual propositions, including requesting her to engage in sexual acts with him in exchange for rent.  During this woman's tenancy, Defendant Hames repeatedly came to her home, uninvited and unannounced.  Because the Defendants never installed a lock on the front door of this tenant's home, Defendant Hames entered her home without a key and without permission. Defendants placed an eviction notice on her front door after she rejected Defendant Hames's sexual advances and requested that he repair her front door lock.  After the Defendants evicted this female tenant, Defendant Hames continued to harass her by following her to her new residence for no apparent legitimate reason.

13.  In yet another example, in or around approximately 2011, Defendant Hames made inappropriate sexual advances to another female tenant, repeatedly telling her that she could keep her money if she engaged in sexual acts with him.  Defendant Hames also frequently parked his car in the front and back yard of this woman's home, sitting in his vehicle and surveilling her home for extended periods of time; he also peered into the window of this woman's home.

14.  The experiences of these three women were not isolated instances.  Rather, these were part of Defendant Hames's longstanding pattern and practice of illegal sexual harassment of numerous female tenants.

Doc. no. 1 (Complaint), ¶¶ 9-14, at 2-5.[4]

---

[4] In addition to the three female tenants referenced in the foregoing excerpts from the government's complaint, *defendants* identified (by initials, and not names) thirteen female tenants whom, *they admit*, complained of acts of "sexual harassment by Randy Hames."  Doc. 129 (Defendants' Motion for Summary Judgment), ¶ 11, at 5; *see also* doc. no. 151 (Government's

The government asks the court to enter a judgment declaring that defendants violated the Fair Housing Act, enjoin defendants from continuing to violate that Act, award monetary damages to each person aggrieved by the defendants' discriminatory conduct, and assess civil penalties. *See id*. at 7-8.[5]

## I. GOVERNMENT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

The government asks for partial summary judgment on the issue of the liability of Hames Marina, L.L.C., by the entry of a judgment declaring that, if Randy Hames is found to have violated the Fair Housing Act, then Hames Marina is vicariously liable for his conduct because he furthered the harassment by way of his role as the

---

Response to Defendants' Motion for Summary Judgment), § II.B., ¶¶ 1-27, at 4-7 (referencing sixteen female tenants ["aggrieved persons"] who alleged acts of sexual harassment by Randy Hames).

[5] The remedies requested by the government are based upon 42 U.S.C. §§ 3614(d)(1), which provides that, in a civil action brought by the Attorney General under either § 3614(a) or § 3614(b), the district court:

(A)   may award such preventive relief, including a permanent or temporary injunction, restraining order, or other order against the person responsible for a violation of this subchapter as is necessary to assure the full enjoyment of the rights granted by this subchapter;

(B)   may award such other relief as the court deems appropriate, including monetary damages to persons aggrieved; and

(C)   may, to vindicate the public interest, assess a civil penalty against the respondent — (*i*) in an amount not exceeding $50,000, for a first violation; and (*ii*) in an amount not exceeding $100,000, for any subsequent violation.

42 U.S.C. §§ 3614(d)(1)(A)-(C).

Marina's agent.  The government also asks for Hames Marina to be declared vicariously liable for any punitive damages that might be awarded for Randy Hames's conduct because the Marina did not, in good faith, attempt to prevent the harassment.[6]

Defendants did not oppose the motion and, thereby, tacitly consented to its entry.[7]  Consequently, the government's motion will be granted.

## II.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants' primary contention is that "nearly all" of the government's claims are barred by the following statute of limitations:[8]

> An *aggrieved person* may commence a civil action in an appropriate United States district court or State court *not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice* . . . to obtain appropriate relief with respect to such discriminatory housing practice . . . .

42 U.S.C. § 3613(a)(1)(A) (emphasis and ellipsis supplied).[9]

_____

[6] *See* doc. no. 126 (Government's Motion for Partial Summary Judgment), at 2.

[7] *See* doc. no. 149 (Defendants' Response to Government's Motion for Partial Summary Judgment).

[8] Doc. no. 129 (Defendants' Motion for Summary Judgment), at 7 (citations omitted); *see also id*. at 3 (where defendants argue that, with the exception of the claims lodged by three former tenants — *i.e.*, Tomeka Bartlett, Bartlett's sister "A.B.," and Kayla Carreker — "every woman . . . signed up by the Government made allegations that are barred by the statute of limitations").

[9] *Id*. at 7 ("The FHA has a two-year statute of limitations."); *id*. at 8 ("The FHA statute of limitations requires aggrieved parties [*sic*:  persons] to file a civil action 'not later than two years after the occurrence or termination of an alleged discriminatory housing practice to obtain appropriate relief.' . . .  Therefore, all claims that fall outside of the two-year statute of limitations are barred as a matter of law and Randy Hames and Hames Marina is [*sic*:  are] entitled to summary judgment.").

Defendants are wrong.  The statute upon which they rely turns upon the phrase "aggrieved person," defined as "any *person* who (1) claims to have been injured by a discriminatory housing practice; or (2) believes that *such person* will be injured by a discriminatory housing practice that is about to occur."  42 U.S.C. § 3602(i) (emphasis supplied).

"Person" is defined in subsection (d) as "one or more individuals, corporations, partnerships, associations, labor organizations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under Title 11, receivers, and fiduciaries."  42 U.S.C. § 3602(d).

Reading the provisions together, § 3613(a)(1)(A) clearly does not address actions commenced by the government.  Instead, it pertains to suits by private individuals or entities, like the consolidated case filed by Tomeka Bartlett and Kayla Carreker.[10]

## A.    The Correct Limitation Periods

Actions commenced by the government on behalf of persons alleging subjection to discriminatory practices prohibited by the Fair Housing Act are authorized by 42 U.S.C. § 3614, which provides that:

> Whenever the Attorney General has reasonable cause to believe

---

[10] See *supra* note 1.

that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights granted by this subchapter and such denial raises an issue of general public importance, the Attorney General may commence a civil action in any appropriate United States district court.

42 U.S.C. § 3614(a). Claims filed pursuant to that provision are

not simply an alternative method of asserting a section 3613(a)(1)(A) claim that a particular aggrieved person has been the victim of a discriminatory housing practice. *Rather, a section 3614(a) claim differs fundamentally from such a claim. A section 3614(a) claim requires reasonable cause to believe that a defendant has engaged in a pattern or practice of discrimination and/or has denied a group of persons their rights in connection with an issue of public importance*, and it permits the Attorney General to assess a civil penalty "to vindicate the public interest." 42 U.S.C. § 3614(d)(1)(c). As such, it is fully consistent with the statutory scheme of the Fair Housing Act to allow the Attorney General to recover compensatory damages on behalf of a victim of such conduct, *even where the* [individual] *victim* ["aggrieved person"] *is time-barred from recovering compensatory damages based solely on his or her individual complaint*.

*United States v. Tanski*, No. 1:04-CV-714, 2007 WL 1017020, at *8-9 (N.D.N.Y. Mar. 30, 2007) (emphasis and alterations supplied).

It is important to note that actions authorized by § 3614(a) are not tied to a specific statute of limitations. As a result, courts determine the applicable tolling period by looking at the nature of the relief requested by the government. *Id*. at *6 (citing *United States v. Hallmark Homes, Inc.*, No. CV01–432–N–EJL, 2003 WL 23219807, at *3 (D. Idaho Sept. 29, 2003) ("Because [§ 3614(a)] does not have a

specific statute of limitations attached to it, the statute of limitations controlling such a civil action varies according to the requested remedy.")).

## 1.    Equitable remedies

The government's request for the entry of declaratory judgments and injunctive relief is "not subject to any time limit." *Garcia v. Brockway*, 526 F.3d 456, 460 (9th Cir. 2008) (citing *United States v. Incorporated Village of Island Park*, 791 F. Supp. 354, 364-68 (E.D.N.Y. 1992); *United States v. City of Parma*, 494 F. Supp. 1049, 1094 n.63 (N.D. Ohio 1980)).[11]  Thus, such remedies "are not time-barred." *Tanski*, 2007 WL 1017020, at *6; *see also United States v. Harrison*, 188 F. Supp. 2d 77, 80 (D. Mass. 2002) (holding that "suits for injunctive or declaratory relief brought by the United States pursuant to [42 U.S.C. § 3614(a)] are not subject to any statute of limitations") (alteration supplied) (citing *Village of Island Park*, 791 F. Supp. at 365).

## 2.    Compensatory damages

On the other hand, the government's request for monetary damages for each

---

[11] Fundamentally, unless Congress specifically provides otherwise, actions commenced by the United States are not bound by statutes of limitation.  *See, e.g.*, *Guaranty Trust Co. of New York v. United States*, 304 U.S. 126, 132-33 (1938) (discussing the origin of the common law rule that "the sovereign is exempt from the consequences of its laches, and from the operation of statutes of limitations"); *United States v. City of Palm Beach Gardens*, 635 F.2d 337, 339 (5th Cir. 1981) (holding that "the United States is not bound by any limitations period unless Congress explicitly directs otherwise").  *See also Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

person aggrieved by the defendants' discriminatory conduct[12] is subject to the three-year statute of limitations found in 28 U.S.C. § 2415(b), providing that "every action for money damages brought by the United States or an officer or agency thereof which is founded upon a tort shall be barred unless the complaint is filed within three years after the right of action first accrues."[13]  *See, e.g.*, *United States v. Limbs*, 524 F.2d 799, 801 (9th Cir. 1975) ("Whenever the United States sues for damages, the substance of the claims must be characterized for purposes of section 2415 as sounding in either tort, contract or quasi-contract.").

When computing the limitations period under § 2415(b), courts exclude all periods of time during which "facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances."  28 U.S.C. § 2416.

In the present case, the government contends that it neither knew, nor reasonably could have known, of facts sufficient to determine whether defendants had engaged in a pattern or practice of discrimination until it learned, based upon

---

[12] Doc. no. 1 (Complaint), at 8 (citing 42 U.S.C. § 3614(d)(1)(B)).  See *supra* note 5 for the text of that statutory provision.

[13] The acts of sexual harassment proscribed by the Fair Housing Act are in the nature of such traditional torts as assault, battery, trespass, and intentional infliction of emotional distress.  *See, e.g.*, BLACK'S LAW DICTIONARY 1626 (9th ed. 2009) (Bryan A. Garner, ed.) (defining *tort* as:  "A civil wrong, other than breach of contract, for which a remedy may be obtained, usu. in the form of damages; a breach of duty that the law imposes upon persons who stand in a particular relation to one another.").

information broadcast by Birmingham television station ABC 33/40 during February of 2018, "that women were alleging that Defendant Randy Hames had propositioned them for sex in exchange for rent."[14]  Defendants do not challenge that assertion.[15] Accordingly, defendants' motion for partial summary judgment based upon the statute of limitations applicable to the claim for monetary damages is due to be denied.

### 3.    Civil penalties

The government's request for assessment of civil penalties to vindicate the public interest[16] is subject to the following, five-year statute of limitations:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained *unless commenced within five years from the date when the claim first accrued* if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

28 U.S.C. § 2462 (emphasis supplied); *see also, e.g.*, *Tanski*, 2007 WL 1017020, at *7; *Hallmark Homes*, 2003 WL 23219807, at *3.  In a "pattern or practice" case,

> the factual prerequisite to filing suit comes into existence upon the completion of the final incident that makes up the pattern or practice. Accordingly, so long as one of the incidents making up a pattern or practice has occurred within the statute of limitations, the pattern and

---

[14] *See* doc. no. 129-5 (Government's Objections and Responses to Defendants' Consolidated Discovery), at 3-4; and doc. no. 151 (Government's Response to Defendants' Motion for Summary Judgment), at 15.

[15] *See* doc. no. 171 (Defendants' Reply Brief).

[16] Doc. no. 1 (Complaint), at 8 (citing 42 U.S.C. § 3614(d)(1)(C)).  See *supra* note 5 for the text of the cited statute.

practice claim is timely.

*United States v. J. Randolph Parry Architects, P.C.*, 608 F. Supp. 3d 203, 206-07

(E.D. Pa. 2022) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 381 (1982)).[17]

Here, defendants concede that the claims of three female tenants are not barred

by the statute of limitations.[18]   Accordingly, the government's pattern or practice

claims for the assessment of civil penalties are not time barred.

**B.      Does the Government State an Actionable Fair Housing Act Claim?**

Defendants also contend that summary judgment should be entered in their

favor because the acts of sexual harassment alleged by the female tenants on which

the government's complaint is founded were isolated, sporadic acts that cannot

support a claim that defendants engaged in a "pattern or practice" of violating the Fair

Housing Act.[19]

Section 3614(a) permits the government to sue when there is reasonable cause

to believe that "(1) there is an 'individual' or a 'group' pattern or practice violative

---

[17] *See also, e.g., 3M Company* (*Minnesota Mining and Manufacturing*) *v. Browner*, 17 F.3d 1453, 1460 (D.C. Cir. 1994) (holding that a pattern or practice claim accrues when the "factual and legal prerequisites for filing suit" have come into existence).

[18] *See* doc. no. 129 (Defendants' Motion for Summary Judgment), at 9 n.2 ("Mr. Hames concedes that claims by A.B., Tomeka Bartlett, and Kayla Carreker are not barred by the statute of limitations.").

[19] *See* doc. no. 129 (Defendants' Motion for Summary Judgment), at 12 ("[T]he government stakes its entire suit against the Defendants on conclusory allegations, which makes summary judgment proper in this case.").

of the Fair Housing Act or (2) whenever a group of persons has been denied rights granted by the Act and that denial raises an issue of general public importance." *United States v. Bob Lawrence Realty, Inc.*, 474 F.2d 115, 122-23 (5th Cir. 1973).[20] The government alleges both, but defendants challenge only the factual basis for a "pattern or practice" claim.

To establish that defendants' conduct amounted to a "pattern or practice" of violating the Fair Housing Act, the government must show, by a preponderance of the evidence, that "discrimination was the company's standard operating procedure[,] the regular rather than the unusual practice." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 336 (1977) (alteration supplied).  Stated differently, the government has to prove "more than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts." *Id*.

Even so, "there is no threshold number of incidents that must occur before the government may initiate litigation." *United States v. Garden Homes Management Corp.*, 156 F. Supp. 2d 413, 420 (D.N.J. 2001) (citing *Bob Lawrence Realty*, 474 F.2d at 123-24).

Randy Hames testified that, with the exception of a female tenant named Marie

---

[20] *See Bonner v. City of Prichard*, *supra* note 11.

Watson,[21] he did not make sexual overtures to any person or offer a housing benefit in exchange for sexual favors.[22]  However, the private plaintiffs in the consolidated case — Tomeka Bartlett and Kayla Carreker — have directly contradicted his denial. Each testified that Hames suggested a rent accommodation in exchange for sex acts. Bartlett said that Hames entered her trailer while she was in the shower, did not leave when she asked him to do so, made inappropriate sexual comments and inquiries, and asked whether she would be willing to exchange sexual favors for rent.[23]  Kayla Carreker testified that, while Randy Hames was in her trailer uninvited, he touched her inner thigh and back without permission and asked if she would exchange sex for rent payments.[24]

Thus, the fundamental question of whether Randy Hames engaged in a pattern

---

[21] Marie Watson testified that Randy Hames brought a bottle of wine to her trailer, and made inappropriate sexual comments to her.  He asked her for oral sex and, when she refused, threatened to evict her.  Watson testified that, ultimately, Hames overpowered her and she performed oral sex. *See* doc. no. 152-15 (Marie Watson Dep.), at 109-36.

[22] Doc. no. 136-2 (Randy Hames's Jan. 14, 2021 Dep.), at 306-17.  **NOTE**: Defendants did not offer Hames's deposition in support of their motion for summary judgment; instead, the government submitted it in support of its motion for partial summary judgment. *See* doc. no. 126-2 (Government's Index of Evidentiary Materials in Support of Motion for Partial Summary Judgment). Regardless, it is a part of the evidentiary record, and may be considered in connection with defendants' motion. *See* Fed. R. Civ. P. 56(c)(3).

[23] *See* doc. no. 129-2 (Tomeka Bartlett Dep.), at 349-76.  **NOTE**:  The government incorporated by reference the disputed material facts identified by the private plaintiffs in the consolidated case of *Bartlett and Carreker vs. Randy Allan Hames, et al.*, Civil Action No. 5:18-cv-1096-CLS.  *See* doc. no. 151 (United States' Response in Opposition to Defendants Randy Hames and Hames Marina's Motion for Summary Judgment), at 25 n.11.

[24] *See* doc. no. 129-3  (Kayla Carreker Dep.), at 159-85.  *See also* doc. no. 150-1 (Audio Recording).

or practice of subjecting female tenants to sexual harassment in exchange for rent or other housing benefits is a genuine issue of material fact that must be resolved at trial. *See United States v. Balistrieri*, 981 F.2d 916, 930 (7th Cir. 1992) ("[A] finding of pattern is a factual finding, and each case must stand on its own facts."); *United States v. Taigen & Sons, Inc.*, 303 F. Supp. 2d 1129, 1138 (D. Idaho 2003) (same). Summary judgment is not appropriate here — this issue is for a jury.

Defendants make a fleeting and wrongheaded argument that, even if this court were to accept the allegations of the females on which the government's complaint is founded as containing sufficient specificity to survive summary judgment, "the Aggrieved Parties [*sic*:  persons] were on notice of a potential claim at the time the described conduct occurred and are now barred by the statute of limitations."[25] Defendants have conflated an element of proof required for an action commenced by the Attorney General under § 3614(a) with the unrelated statute pertaining to actions commenced by individual "aggrieved persons" under § 3613(a)(1)(A), and their statute-of-limitations contentions have been rejected for the reasons previously discussed.

## C.    Is the Government's Claim for Injunctive Relief Moot?

The final contention in defendants' motion is that the government cannot

---

[25] Doc. no. 129 (Defendants' Motion for Summary Judgment), at 12-13.

15

obtain injunctive relief against Hames Marina, L.L.C., because it was dissolved.[26] That is not the end of the inquiry, however, because the government contends that Randy Hames continued to intimidate or threaten persons associated with this litigation in violation of the Fair Housing Act following the dissolution of Hames Marina.  The government further contends that Hames transferred the business of Hames Marina as a gift to his daughter, Miranda Self, and that he "has been involved in the establishment and continued operation of Marina Management [Company, L.L.C.]," the entity that the government claims is the successor to Hames Marina, such that the court is not deprived of power to determine whether the alleged illegal conduct should be enjoined.[27]  Defendants did not respond to these arguments in their reply brief.[28]

Defendants' contention raises two separate, but related, issues:  whether the government's claim for injunctive relief is moot; and, if not, whether the government ultimately may show entitlement to such relief.  *See United States v. Askins & Miller Orthopaedics, P.A.*, 924 F.3d 1348, 1358 (11th Cir. 2019).

"A case is moot when it no longer presents a live controversy with respect to

---

[26] *Id.* at 13-14.

[27] *See* doc. no. 151 (Government's Response to Defendants' Motion for Summary Judgment), at 30.

[28] *See* doc. no. 171 (Defendants' Reply Brief).

which the court can give meaningful relief." *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1183 (11th Cir. 2007).  There is an important exception, however, where a defendant voluntarily puts an end to his offensive conduct — *i.e.*, voluntary cessation.  *Id.* at 1183; *Askins & Miller*, 924 F.3d at 1355.

In cases of "voluntary cessation," the case is not automatically mooted. Instead, the party asserting mootness must show that "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 189 (2000).  That burden is  heavy.  *Id.* ("The 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.") (quoting *United States v. Concentrated Phosphate Export Association*, 393 U.S. 199, 203 (1968) (alteration in original)).

The standard announced in *Laidlaw* applies when a business entity's closure is alleged to have mooted the case.  *Id.* at 193.  The Eleventh Circuit has identified factors relevant to determining whether injunctive relief is moot in those circumstances:  "(1) whether the challenged conduct was isolated or unintentional, as opposed to a continuing and deliberate practice; (2) whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or

timed to anticipate suit; and (3) whether, in ceasing the conduct, the defendant has acknowledged liability." *Askins & Miller,* 924 F.3d at 1356 (citing *Sheely*, 505 F.3d at 1184).

The parties did not address those factors, but the court will.

The first factor implicates the crux of this case. As discussed above, there is a genuine issue of material fact as to whether defendants engaged in a "pattern or practice" of discrimination, or whether the complained of incidents were isolated or unintentional. Accordingly, this factor militates against a finding of mootness.

Second, the timing of Hames Marina's dissolution is "more indicative of a [judgment]-avoidance strategy than a changed heart." *Id*. The government commenced the present action on July 9, 2018. The private plaintiffs in the consolidated case filed their complaint on July 17, 2018. Hames Marina, L.L.C., was dissolved shortly thereafter, on October 18, 2018. Marina Management Company, L.L.C., was formed on July 3, 2018, with Randy Hames's daughter, Miranda Self, listed as the registered agent.[29] In light of that sequence of events, the court cannot conclude that the dissolution of Hames Marina was motivated by a change of heart, as opposed to a judgment-avoidance strategy of transferring assets that could become

---

[29] *See* Business Entity Records, Alabama Secretary of State, found at https://arc-sos.state.al. us.cgi/corpdetail.mbr/detail?corp=000523429 (last visited Jan. 23, 2023). The "transaction date" listed on the Secretary of State's website, July 9, 2018, is the same date on which the government commenced this action.

subject to monetary judgments.

Moreover, with respect to the third factor, it is clear that defendants have not acknowledged liability for the incidents underpinning not only this action, but also the case commenced by the two private plaintiffs.[30]

For all of the foregoing reasons, the court concludes that the government's claim for injunctive relief is not moot. Even so, that finding does not control whether injunctive relief may ultimately be granted.

> That is due to the differences between the standard for mootness due to voluntary cessation and the standard for granting injunctive relief. For a case to be moot under the voluntary cessation doctrine, the party asserting mootness — here, the defendants — bear the burden to convince a court that 'subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to occur." *Laidlaw*, 528 U.S. at 189, 120 S. Ct. 693 (internal quotation marks and citation omitted). By contrast, to obtain an injunction, the *plaintiff* must "establish by a preponderance of the evidence that this form of equitable relief is necessary." *Sheely*, 505 F.3d at 1182 n.10. Because "the two inquiries are strikingly different" — both as to who bears the burden and as to what that burden is — it follows that "[e]ven though a case is not moot, that does not mean that injunctive relief follows automatically." *Id.* The analyses may "overlap[ ]" because both are concerned with the likelihood of future unlawful conduct," but . . . the answers may well turn out to be different. *Id.*

*Askins & Miller*, 924 F.3d at 1357-58 (emphasis and alterations in original; ellipsis supplied).

At this point in the proceedings, the court cannot determine whether injunctive

---

[30] See *supra* note 1.

relief "is necessary," and the parties have not fully presented arguments on this issue.[31]   Even so, the record shows that Randy Hames contacted certain individuals involved directly or indirectly in this action, resulting in a finding of contempt.[32]   Due to the passage of time, and the absence of further evidentiary submissions on this point, defendants' motion for summary judgment on this issue is due to be denied, but without prejudice.   Accordingly, the court finds that the government's claim for injunctive relief is not moot, but reserves decision on the merits of whether such equitable relief is necessary.

   **DONE** this 6th day of March, 2023.

_____

Senior United States District Judge

---

[31] A party seeking injunctive relief must first show that the court's exercise of equity jurisdiction is proper.   *Younger v. Harris*, 401 U.S. 37, 43-44 (1971).   The moving party must show that:  "(1) it has no adequate legal remedy; (2) the threatened injury is real, not imagined; and (3) no equitable defenses exist."   *Clark Construction Co., Inc. v. Pena*, 930 F. Supp. 1470, 1477-78 (M.D. Ala. 1996) (citing *Roe v. Operation Rescue*, 919 F.2d 857, 867 n.8 (3d Cir. 1990)).

[32] *See* doc. no. 141 ("Private Plaintiffs' Motion for Relief on Defendant Hames' Violation of the Court's Orders (Doc. 31 and 81) or Hearing on the Same"); and, May 3, 2021 Minute Entry on the docket of this case, holding Randy Hames in contempt:  *to-wit*,

   Minute Entry for proceedings held before Judge C Lynwood Smith, Jr:  Contempt Hearing held on 5/3/2021.  Candis McGowan, Lacey Danley, and Robert Crocker present for private pla [plaintiffs in consolidated action]; Carla Ward, Elise Shore, and Jason Cheek present for govt [United States]; Gregory Yaghmai and Kile Turner present for def [defendant Randy Hames]; examination of witnesses; exhibits identified and entered; Def held in contempt - permanent deletion of Facebook, 24 hrs in USMS custody, and proceeding expenses taxed to def. (Court Reporter Christina Decker.) Associated Cases: 5:18-cv-01055-CLS, 5:18-cv-01096-CLS(BJL) (Entered: 05/03/2021) [alterations supplied].