FILED

2023 Oct-31  PM 03:02
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 5:18-cv-1055-CLS |
| | ) | |
| RANDY HAMES and HAMES | ) | |
| MARINA, L.L.C., d/b/a HAMES | ) | |
| MARINA AND MOBILE HOME | ) | |
| PARK, | ) | |
| | ) | |
| Defendants. | ) | |

## PRETRIAL ORDER

A pretrial conference was held in this action on October 30, 2023, wherein, or

as a result of which, the following proceedings were held and action taken:

    **1. Appearances**.  The attorneys who appeared at the conference were:

| | |
|---|---|
| Elise Sandra Shore<br>Alan A. Martinson | United States Department of Justice, Civil Rights<br>Division, Housing and Civil Enforcement Section<br>950 Pennsylvania Ave. N.W.<br>Washington, D.C. 20530 |
| Carla C. Ward<br>Jason R. Cheek | Office of the United States Attorney for the<br>Northern District of Alabama<br>1801 4th Avenue North<br>Birmingham, Alabama 35203 |
| Gregory F. Yaghmai | Yaghmai Law, L.L.C.<br>2081 Old Columbiana Road<br>Birmingham, Alabama 35216 |

Kile T. Turner        Norman Wood Kendrick & Turner
1130 22nd Street South, Suite 3000
Birmingham, Alabama 35205

**2. Jurisdiction and venue**. Jurisdiction exists under 28 U.S.C. § 1331,[1] § 1345,[2] and 42 U.S.C. § 3601 *et seq*. (*i.e.*, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 ("Fair Housing Act")). *See also, e.g.*, 42 U.S.C. § 3614(a).[3] Personal jurisdiction and venue are not contested.

**3. Parties and trial counsel**. The parties before the court are correctly named, and the designated trial counsel for each are, as set out below:

| PARTIES | TRIAL COUNSEL |
|---|---|

**Plaintiff, United States of America**:

| | |
|---|---|
| Elise Sandra Shore | U.S. Department of Justice, Civil Rights Division, Washington, D.C. 20530 |
| Alan A. Martinson | Same as above |

---

[1] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

[2] "[T]he district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress."  28 U.S.C. § 1345 (alteration supplied).

[3] "Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights granted by this subchapter, or that any group of persons has been denied any of the rights granted by this subchapter and such denial raises an issue of general public importance, the Attorney General may commence a civil action in any appropriate United States district court." 42 U.S.C. § 3614(a).

| | |
|---|---|
| Carla C. Ward | Assistant United States Attorney, Northern District of Alabama, Birmingham, Alabama 35205 |
| Jason R. Cheek | Same as above |

**Defendants, Randy Hames and Hames Marina, L.L.C.**:

| | |
|---|---|
| Gregory F. Yaghmai | Yaghmai Law, L.L.C. Birmingham, Alabama 35216 |
| Kile T. Turner | Norman Wood Kendrick & Turner Birmingham, Alabama 35205 |

**4.  Pleadings**.  The following pleadings, with the modifications contained in this order, have been allowed:  complaint (doc. no. 1); answer of both defendants (doc. no. 20); memorandum opinion addressing pending motions (doc. no. 189); and, orders entered in accordance with the foregoing opinion (doc. no. 190).

**5.  Statement of the case.**

**(a)  Agreed summary of undisputed facts**.[4]

1.  Randy Hames owned and managed "Hames Marina and Mobile Home Park" located at 670 County Road 248 in Cullman, Alabama 35057, from at least January 1, 2008, until March 9, 2018.

---

[4] *Compare* doc. no. 1 (Complaint), ¶¶ 5, 9 *with* doc. no. 20 (Defendants' Answer), ¶¶ 5, 9 (admitting).  *See also, e.g.*, doc. no. 136 (United States' Memorandum in Support of Motion for Partial Summary Judgment), at 5, ¶ 14 ("From 2008 until March 2018, Randy Hames was the sole Hames Marina property manager.") (citing, *inter alia*, doc. no. 62, ¶ 5 (Answer filed in *Tomeka Bartlett and Kayla Carreker v. Randy Allan Hames et al.*, Civil Action No. 5:18-cv-1096-CLS)); doc. no. 129-6 (Business Entity Record, Alabama Secretary of State); "Stipulations" included in ¶¶ 5(b)(1)–(4), at 4 of proposed Pretrial Order submitted by the parties on October 25, 2023.

2.   The land, some of the mobile homes, and the related buildings located on the land that comprised the marina and mobile home park, were all owned by Randy Hames personally.  Some tenants rented lots at the mobile home park, and placed their own mobile homes on the lots.

3.   From approximately October of 2007 until its dissolution in 2018, Randy Hames was the sole member and owner of "Hames Marina and Mobile Home Park."

4.   As property manager, Randy Hames had sole and final decision-making authority to act on behalf of "Hames Marina and Mobile Home Park."[5]

   **(b)  Plaintiff's positions**.

   ***(i)*  Factual contentions**.

The United States contends that, since at least 2011, defendant Randy Hames subjected female tenants of residential rental property in Hames Marina and Mobile Home Park to discrimination on the basis of sex, including severe, pervasive, and unwelcome sexual harassment, on multiple occasions.  Such conduct allegedly included, but was not limited to:

   a.  Demanding that female tenants engage in, or pressuring them to

---

[5] Compare doc. no. 1 (Complaint), ¶ 9 (asserting that, "[a]t all times relevant to this action, Defendant [Randy] Hames controlled all aspects of the management of the [rental properties located in Hames Marina and Mobile Home Park] including, but not limited to, recruiting prospective tenants, accepting or rejecting prospective tenants, setting rates for rent and security deposits, collecting rent, accepting requests for repairs, and evicting tenants") (alterations supplied)) *with* doc. no. 20 (Defendants' Answer), ¶ 9 (admitting).

engage in[,] oral sex or other sexual acts with him [in order] to obtain or keep rental housing;

b. Subjecting female tenants to unwelcome sexual contact, including but not limited to hugging female tenants, touching (or attempting to touch) female tenants' bodies, and rubbing his body against female tenants' bodies;

c. Offering to grant tangible housing benefits — such as reducing or excusing rent payments, late payments, or deposit amounts — in exchange for engaging in sexual acts with him;

d. Making intrusive, unannounced visits to female tenants' homes for no apparent legitimate purposes and to further his sexual advances;

e. Menacing female tenants by repeatedly parking for extended periods of time in front of their homes when he had no apparent legitimate reason to do so;

f. Making unwelcome sexual comments, propositions, and sexual advances to female tenants; and

g. Taking adverse housing actions, such as evicting or refusing to make repairs, or threatening to take such actions, against female tenants who have objected to his unwelcome sexual advances and/or refused to engage in sexual acts with him.

Doc. no. 1 (Complaint), ¶¶ 10(a)-(g) (alterations supplied).

### (*ii*) Damages sought from the jury

The United States seeks compensatory and punitive damages on behalf of fourteen former female tenants of Hames Marina and Mobile Home Park who contend that Randy Hames sexually harassed them when each resided at the Mobile Home

Park. The aggrieved females on whose behalf the United States commenced suit are: Ashley Bartlett; Crystal Bee; Michelle Christian; Karanda Gann; Shaela Gann; Amberly Green; Brittaney Lands; Tonya Ramos (now known as Tonya Sellers); Jamie Rodgers (now known as Jamie Russell); Amanda Shearin; Doris Marie Watson; Tammy Wright; Vicky Wright; and, Julia Wylie.[6]

The United States contends that *compensatory damages* are warranted for the emotional distress suffered by those aggrieved persons, including interference with housing rights, invasion of privacy, loss of security, and anxiety, anger, fear, shame, humiliation, degradation, embarrassment, and/or frustration.[7]

The United States also contends that *punitive damages* are warranted because Randy Hames's actions were intentional, willful, and/or taken in reckless disregard for the rights of others.[8]

### (*iii*) Damages sought from the Court

If the jury should find that Randy Hames violated the Fair Housing Act, the United States also will ask *the Court* to impose a civil penalty against him, to vindicate the public interest. *See* 42 U.S.C. § 3614(d)(1)(C); 28 C.F.R. § 85.5

---

[6] The anticipated testimony of each aggrieved person is summarized *infra*, in "Exhibit A" to this Pretrial Order.

[7] The precise amount needed to compensate the aggrieved persons for the emotional distress suffered by each will be determined by the jury.

[8] The precise amount of punitive damages needed to adequately punish Randy Hames, and to deter others from engaging in similar conduct, also will be determined by the jury.

(increasing the maximum civil penalty permitted).

The United States also will ask for declaratory and injunctive relief under 42 U.S.C. § 3614(d)(1)(A), including an injunction permanently enjoining Randy Hames from engaging in discrimination on the basis of sex, and directing him to take actions (or to refrain from taking actions) necessary to prevent the recurrence of the discriminatory conduct in the future and to eliminate the effects of the unlawful conduct.[9]

### (*iv*) **Government's legal contentions**.

The United States contends that it is entitled to recover upon the following theories:

(a)  Defendants' conduct constituted a denial of housing, or otherwise made a dwelling unavailable, because of sex, in violation of § 3604(a) of the Fair Housing Act (42 U.S.C. § 3604(a));

(b)  Defendants' conduct constituted discrimination in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection therewith, because of sex, in violation of § 3604(b) of the Fair Housing Act;

---

[9] *See* doc. no. 189 (Memorandum Opinion), at 15-20 (holding that the Government's claim for injunctive relief was not moot).

7

(c)  Defendants' conduct constituted the making of statements with respect to the rental of a dwelling that indicated a preference, limitation, or discrimination based on the sex of the tenant (female), in violation of § 3604(c) of the Fair Housing Act;

(d)  Defendants' conduct constituted coercion, intimidation, or interference with a person in the exercise or enjoyment of, or on account of having exercised or enjoyed, her rights granted or protected by the Fair Housing Act, in violation of § 3617 of that Act;

(e)  Defendants' conduct constituted a pattern or practice of resistance to the full enjoyment of the rights granted by § 3614(a) of the Fair Housing Act; and

(f)  Defendants' conduct constituted a denial of fair housing rights to a group of persons, in violation of § 3614(a) of the Fair Housing Act.

**(c)  Defendants' positions**.

Defendants deny the Government's contentions.

**6.  Discovery and other pretrial procedures.**

(a)   Discovery is closed.

(b)   The pretrial procedures specified in "Exhibit B" are adopted as part of this Order.

(c)   Pending motions:  There are no pending motions.

**7.  Jury Trial**.  Seven days prior to trial, the parties shall present to the court

any special questions or topics for *voir dire* examination of the jury venire, and, to the extent the same can be anticipated, any requests for instructions to the jury (including extracts of any statutes on which instructions are requested).  Any motions *in limine* must be filed at least 21 days prior to trial.

**8. Trial Date**.  This case is set for trial in Huntsville, Alabama, on the 29th day of January, 2024, at 9:30 o'clock a.m.  **Counsels' estimated length of trial:  five to seven days**.

**ORDERED** this 31st day of October, 2023, that the foregoing provisions are binding upon all parties, unless modified by further order for good cause shown.

_____
Senior United States District Judge

9

# EXHIBIT A
## ANTICIPATED TESTIMONY OF AGGRIEVED PERSONS

1.  **Ashley Bartlett** will testify that, when she resided at Hames Marina and Mobile Home Park ("Hames Marina"), beginning in approximately late June 2017, Randy Hames's sexual harassment included unwelcome sexual advances, unwelcome sexual/physical contact, unwelcome sexual comments, and at least one intrusive, unannounced visit to her home.

2.  **Crystal Bee** will testify that, when she resided at Hames Marina, beginning in approximately late 2013, Randy Hames sexually harassed her.  His harassment included unwelcome sexual advances (requests for oral sex), unwelcome sexual/physical contact, unwelcome sexual comments, and intrusive, unannounced visits to her home once when she was showering.

3.  **Michelle Christian** will testify that Randy Hames sexually harassed her when she applied to reside at Hames Marina in or around late 2010 or early 2011. The harassment included unwelcome sexual advances (request for sex), unwelcome sexual/physical contact, and unwelcome sexual comments.

4.  **Karanda Gann** will testify that Randy Hames sexually harassed her during the approximately six-month period that she resided at Hames Marina, beginning in the summer of 2008.  The harassment included unwelcome sexual advances (requests

for oral sex), unwelcome sexual/physical contact, unwelcome sexual exposure, unwelcome sexual comments, and adverse housing actions against Ms. Gann and her sister, Shaela Gann, after she refused his sexual advances and reported his conduct to law enforcement (*i.e.*, the Cullman County Sheriff's Department). Randy Hames's harassment also included masturbating in front of Ms. Gann.

**5. Shaela Gann** will testify that Randy Hames sexually harassed her when she resided at Hames Marina for a few months in 2008. The harassment included unwelcome sexual comments and adverse housing actions against Ms. Gann and her sister, Karanda Gann, after Karanda Gann refused Randy Hames's sexual advances and reported the conduct to law enforcement (*i.e.*, the Cullman County Sheriff's Department).

**6. Amberly Green** will testify that Randy Hames sexually harassed her when she resided at Hames Marina for approximately four or five months, beginning in July of 2014. The harassment included unwelcome sexual advances (requests for oral sex), unwelcome sexual/physical contact, unwelcome sexual comments, and adverse housing actions against Ms. Green after she refused Randy Hames's sexual advances. On more than one occasion, Randy Hames also parked in front of Ms. Green's home for no apparent legitimate reason, awaiting her arrival.

**7. Brittaney Lands** will testify that Randy Hames sexually harassed her when

she resided at Hames Marina for a few months in the spring of 2015.  The harassment included an unwelcome sexual advance (request for oral sex), unwelcome sexual/physical contact, unwelcome sexual exposure, and adverse housing actions against Ms. Lands after she refused his sexual advance.

**8. Tonya Ramos** (now known as Tonya Sellers) will testify that Randy Hames sexually harassed her when she resided at Hames Marina in or around approximately 2011.  Mr. Hames made inappropriate sexual advances, and repeatedly told her she could keep her money if she engaged in sexual acts with him.  Randy Hames also frequently parked his car in the front and back yard of her home, sitting in his vehicle and surveilling her home for extended periods of time.  Randy Hames also peered into the window of Ms. Ramos's home.

**9.  Jamie Rodgers** (now known as Jamie Russell) will testify that Randy Hames sexually harassed her when she resided at Hames Marina in approximately 2012 and 2013.  The harassment included unwelcome sexual advances, unwelcome sexual comments, intrusive, unannounced visits to her home, and adverse housing actions against Ms. Rodgers after she refused his sexual advances.  After Randy Hames evicted her, he continued to harass her by coming to her workplace to pick up payments he claimed Ms. Rodgers owed him.

**10.  Amanda Shearin** will testify that Randy Hames sexually harassed her

when she resided at Hames Marina for approximately one year, beginning in late 2015. The harassment included unwelcome sexual advances, including requests for oral sex in exchange for help with rent, unwelcome sexual/physical contact, unwelcome sexual comments, and at least one intrusive, unannounced visit to her home. Randy Hames also frequently parked outside Ms. Shearin's home and stared at her home for no apparent legitimate purpose. After Randy Hames evicted Ms. Shearin, he continued to harass her by offering to waive the money she owed him if she agreed to engage in sexual acts with him. After Ms. Shearin refused his unwelcome sexual advance, Randy Hames pursued garnishment of Ms. Shearin's wages.

**11. Doris Marie Watson** will testify that Randy Hames sexually harassed her when she resided at Hames Marina for approximately one year, beginning in August of 2012. The harassment included unwelcome sexual advances (requests for oral sex), unwelcome sexual/physical contact, unwelcome sexual comments, and engaging in an unwanted sexual act. Ms. Watson will also testify that Randy Hames demanded oral sex and threatened to evict Ms. Watson if she did not comply with his demand. Ms. Watson was not behind on rent when this occurred. Ms. Watson performed oral sex because she feared eviction.

**12. Tammy Wright** will testify that Randy Hames sexually harassed her when

13

she resided at Hames Marina for approximately six months, beginning in late 2010. The harassment included unannounced visits to her home, unwelcome sexual/physical contact, unwelcome sexual advances, including requests for her to go with him to his home in exchange for help with rent, and threats of adverse housing action after she told Mr. Hames's then-girlfriend about his sexual advances.

13. **Vicky Wright** will testify that Randy Hames sexually harassed her when she resided at Hames Marina for approximately four days in August or September of 2010. The harassment included intrusive, unannounced visits to her home, once when she was sleeping.

14. **Julia Wylie** will testify that Randy Hames sexually harassed her when she resided at Hames Marina for approximately six months, beginning in 2010. Randy Hames frequently drove by Ms. Wylie's home and stared at her for no apparent legitimate purpose. He also went to her work and followed her home from work, ostensibly to collect rent. Randy Hames's harassment also included at least one intrusive, unannounced visit to her home. Before Ms. Wylie moved out of Hames Marina, Randy Hames offered to forgive money that he claimed she owed him in exchange for sexual favors. Ms. Wylie refused this unwelcome sexual advance. After she moved out of Hames Marina, Randy Hames filed a small claims action against her and continued to go to her work and tried to follow her to her new home.

# EXHIBIT B
## STANDARD PRETRIAL PROCEDURES

1. **Damages.**  The parties shall, at least 21 days prior to trial, serve and file a list itemizing all damages and equitable relief being claimed or sought, showing the amount (and, where applicable, the method and basis of computation) of such items.

2. **Witnesses — Exchange of Lists:**

(a) **Expert witnesses** — To the extent the parties have not previously complied with Fed. R. Civ. P. 26(a)(2), the parties shall, at least 21 days prior to trial, serve and file a list stating the names and addresses of all expert witnesses who have been identified in accordance with the report of the parties' planning meeting under Fed. R. Civ. P. 26(f) and in accordance with earlier orders and whose testimony they may offer at trial.  The list shall include, to the extent not previously provided, the information specified in Fed. R. Civ. P. 26(a)(2)(B) with respect to any such person other than a medical expert.

(b) **Other witnesses** — To the extent the parties have not previously complied with Fed. R. Civ. P. 26(a)(3), the parties shall, at least 21 days prior to trial, serve and file a list stating the names and addresses of all witnesses (other than expert witnesses) whose testimony they may offer at trial.

(c) **Contents of lists** — The parties shall appropriately indicate on such

15

lists (1) which persons are their "primary witnesses" (those whose testimony they expect to offer, absent a favorable ruling on summary judgment, directed verdict, or involuntary dismissal), (2) which persons are their "optional witnesses" (those whose testimony will probably not be needed, but who have been listed to preserve their right to offer such testimony should the need arise in the light of developments at trial), and (3) which of their primary and optional witnesses they expect to present by means of deposition.

Unless specifically agreed by the parties or allowed by the court for good cause shown, the parties shall be precluded from offering substantive evidence through any witness not so listed. The listing of a witness does not commit the party to have such witness available at trial, or to call such witness to testify, but does preclude the party from objecting to the presentation of such witness's testimony by another party. As to any witnesses shown on such list to be presented by deposition, a party may serve and file a list disclosing any objections to the use under Rule 32(a) of a deposition designated by another party pursuant to the foregoing or under Fed. R. Civ. P. 26(a)(3)(B). Objections not so disclosed, other than objections under Rules 402 and 403 of the Federal Rules of Evidence, shall be deemed waived, unless excused by the court for good cause shown.

3. **Exhibits**.

(a) **Exchange of lists** — To the extent the parties have not previously complied with Fed. R. Civ. P. 26(a)(3)(C), the parties shall, at least 21 days prior to trial, serve and file a list providing an appropriate identification of each document or other exhibit, including summaries of other evidence, separately identifying those which the party expects to offer and those which the party may offer if the need arises. As to any document or other exhibit, including summaries of other evidence shown on such list, a party may serve and file a list disclosing any objection at least ten days prior to trial, together with the grounds therefor, that may be made to the admissibility of materials identified on such list. Objections not so disclosed, other than objections under Rules 402 and 403 of the Federal Rules of Evidence, shall be deemed waived unless excused by the court for good cause shown. Unless specifically agreed by the parties or allowed by the court for good cause shown, the parties shall be precluded from offering as substantive evidence any exhibit not so identified. Except where beyond the party's control or otherwise impractical (*e.g.*, records from a third-party obtained by subpoena), each party shall make such exhibits available for inspection and copying.

(b) **Marking —** Each party which anticipates offering as substantive evidence as many as <u>six</u> exhibits shall premark such exhibits in advance of trial, using exhibit labels and exhibit lists available from the Clerk of Court. By the time the case

17

is scheduled for trial, a copy of the exhibit list shall be served and filed, with the exhibits being made available for inspection by opposing counsel; the presentation of evidence at trial shall not ordinarily be interrupted for opposing counsel to examine a document that has been so identified and made available for inspection.