FILED

2024 Jan-25  AM 10:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Civil Action No. 5:18-cv-1055-CLS** |
| ) | |
| **RANDY HAMES and HAMES** ) | |
| **MARINA d/b/a HAMES MARINA** ) | |
| **AND MOBILE HOME PARK,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDERS
## ON PRE-TRIAL MOTIONS

This case is scheduled for trial, beginning Monday, January 29, 2024.  The

parties filed an inordinate number of pre-trial motions, which are addressed below.

**A.**   **Document No. 206** — *Government's motion to admit evidence of Randy Hames's guilty pleas*

During 2018, defendant Randy Hames was charged in the Circuit Court of

Cullman County, Alabama, with twelve criminal offenses growing out of complaints

filed by four females, three of whom were former tenants of Hames Marina and

Mobile Home Park.  The indictments filed in the cases numbered CC-2018-480 and

CC-2018-482 each contained four counts,[1] and charged Hames with:  human

---

[1] These cases relate to the complaints made by Tomeka Bartlett and Kayla Carreker, who are the private plaintiffs in the case filed in this court as Civil Action No. 5:18-cv-1096-CLS.  *See* doc. no. 206-1 (Bartlett), at ECF 2; doc. no. 206-3, at ECF 2 (Carreker).

trafficking in the second degree;[2] attempted sexual extortion;[3] soliciting prostitution;[4] and, stalking in the second degree.[5]  The two-count indictment filed in case number CC-2018-481[6] charged him with human trafficking in both the first[7] and second degree.[8]  And finally, the indictment filed in case number CC-2018-743[9] charged Hames with two counts of human trafficking in the second degree.[10]

Hames entered into plea agreements on November 30, 2023, which resulted in the human trafficking charges contained in the first count of each of the foregoing indictments being amended to allege charges of "harassment" in violation of Alabama Code § 13A-11-8(a)(1)(b).[11]  The remaining counts were *nolle prossed*, and Hames

---

[2] Ala. Code § 13A-6-153.

[3] Ala. Code § 13A-6-241.

[4] Ala. Code § 13A-12-121.

[5] Ala. Code § 13-6-90.1.

[6] This case relates to complaints made by Doris Marie Watson, one of the fourteen aggrieved persons on whose behalf the government brought the present case.  *See* doc. no. 206-2, at ECF 2.

[7] Ala. Code §§ 13A-6-152.

[8] Ala. Code § 13A-6-153.

[9] This case relates to complaints lodged by Alisha Coates-Cobb.  The government did not provide a copy of the documents supporting the plea agreement in that case, and did not identify it as an exhibit for trial.

[10] Ala. Code § 13A-6-153.

[11] The cited Alabama statute defines the crime of "harassment" as follows:

> (a)(1) HARASSMENT.  A person commits the crime of harassment if, with intent to harass, annoy, or alarm another person, he or she either:
>
> > a. Strikes, shoves, kicks, or otherwise touches a person or subjects him or her to physical contact.

pled "guilty" to the amended charges.  He was sentenced to four concurrent sentences of 30 days, but each was "suspended, with an unsupervised probationary period of 24 months."[12]  In addition, Hames surrendered his license to practice law in the State of Alabama.

The government contends that Hames's plea agreements in the first three cases listed above are admissible as substantive evidence,[13] because they are excluded from the definition of "hearsay" by Federal Rule of Evidence 801(d)(2)(A), which provides that a statement offered against an opposing party, and one which was made by that party in an individual or representative capacity, "is not hearsay."

Defendants do not address the government's contention head-on, but argue instead that Federal Rule of Evidence 609 — which addresses the admissibility of

---

b. Directs abusive or obscene language or makes an obscene gesture towards another person.

(2) For purposes of this section, harassment shall include a threat, verbal or nonverbal, made with the intent to carry out the threat, that would cause a reasonable person who is the target of the threat to fear for his or her safety.

(3) Harassment is a Class C misdemeanor.

Ala. Code § 13A-11-8(a).

[12] Doc. no. 206-1, at ECF 7.

[13] As recorded in note 9, *supra*, the government did not provide a copy of the documents supporting the plea agreement in Cullman County, Alabama, Criminal Case No. CC-2018-743, pertaining to complaints lodged by Alisha Coates-Cobb, and did not identify it as an exhibit for trial. For such reasons, the government stipulated that "testimony and evidence related to Alisha Cobb is irrelevant to this case."  Doc. no. 232 (Government's Reply to Motions *in Limine* & Criminal Plea Brief), at 6 n.4.

criminal convictions to attack the character of a witness for truthfulness — justifies exclusion of Hames's plea agreements.[14]  Defendants' argument misses the mark, as the government seeks to introduce Hames's plea agreements as substantive evidence, and not for purposes of impeaching his character for truthfulness.

Further, as the government notes, it is well settled that guilty pleas are admissible against a party opponent.  *See United States v. Haddad*, 10 F.3d 1252, 1258 (7th Cir. 1993) ("Guilty pleas are clearly admissible under the Federal Rules of Evidence 801(d)(2) as relevant statements of the defendant."); *see also Wilson v. Doss*, 856 F. Supp. 2d 1231, 1234 (M.D. Ala. 2012) (holding that a guilty plea was admissible because, "[g]enerally speaking, an admission by a party opponent is

---

[14] *See* doc. no. 226, at 3-4.  The relevant portions of Rule 609 read as follows:

(a) IN GENERAL.  The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:

(1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:

(A) must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant; and

(B) must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant; and

(2) for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving — or the witness's admitting — a dishonest act or false statement.

Fed. R. Evid. 609(a).

admissible evidence, not inadmissible hearsay").

Even so, this court still must determine whether Hames's pleas to the amended charges of harassment are relevant to the government's claims. *See* Fed. R. Evid. 401.[15]

The Fair Housing Act permits the government to sue when there is reasonable cause to believe that "(1) there is an 'individual' or a 'group' pattern or practice violative of the Fair Housing Act or (2) whenever a group of persons has been denied rights granted by the Act and that denial raises an issue of general public importance." *United States v. Bob Lawrence Realty, Inc.*, 474 F.2d 115, 122-23 (5th Cir. 1973) (citing 42 U.S.C. § 3614(a)).[16]  The government alleges both, but need satisfy only one of those requirements for liability to be imposed on defendants.

To establish that defendants' conduct amounted to a "pattern or practice" of violating the Fair Housing Act, the government must show, by a preponderance of the evidence, that "discrimination was the company's standard operating procedure[,] the regular rather than the unusual practice." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 336 (1977) (alteration supplied).  Stated differently, the

---

[15] Federal Rule of Evidence 401 provides that:  "Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

[16] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

government has to prove "more than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts." *Id*.

Even so, "there is no threshold number of incidents that must occur before the government may initiate litigation." *United States v. Garden Homes Management Corp.*, 156 F. Supp. 2d 413, 420 (D. N.J. 2001) (citing *Bob Lawrence Realty*, 474 F.2d at 123-24). In that regard, the government's complaint alleges that:

10.  Since at least 2011, Defendant Hames has subjected female tenants of the Defendants' residential rental property to discrimination on the basis of sex, including severe, pervasive, and unwelcome sexual harassment, on multiple occasions. Such conduct has included, but is not limited to:

    a.  *Demanding that female tenants engage in, or pressuring them to engage in oral sex or other sexual acts with him* [*in order*] *to obtain or keep rental housing*;

    b.  Subjecting female tenants to unwelcome sexual contact, including but not limited to hugging female tenants, touching (or attempting to touch) female tenants' bodies, and rubbing his body against female tenants' bodies;

    c.  *Offering to grant tangible housing benefits — such as reducing or excusing rent payments, late payments, or deposit amounts — in exchange for engaging in sexual acts with him*;

    d.  Making intrusive, unannounced visits to female tenants' homes for no apparent legitimate purposes and to further his sexual advances;

    e.  Menacing female tenants by repeatedly parking for extended

periods of time in front of their homes when he had no apparent legitimate reason to do so;

    f.    *Making unwelcome sexual comments, propositions, and sexual advances to female tenants*; and

    g.    Taking adverse housing actions, such as evicting or refusing to make repairs, or threatening to take such actions, against female tenants who have objected to his unwelcome sexual advances and/or refused to engage in sexual acts with him.

11.  For instance, in or around December 2017, *Defendant Hames requested that a female tenant engage in oral sexual acts with him in exchange for rent*.  In the presence of her toddler, Defendant Hames attempted to put his arm around this woman and to place his hand on her upper thigh.  After she rejected these advances, the Defendants placed an eviction notice on her door.  While this female tenant was residing on Defendants' property, Defendant Hames *also repeatedly made inappropriate sexual comments to her* and entered her home without permission on several occasions, including when she was showering and sleeping.  Defendant Hames also frequently parked in the driveway of her home and watched her through the windows for extended periods of time for no apparent legitimate purpose.

12.  Additionally, in or around November 2017, Defendant Hames subjected another female tenant to unwelcome sexual propositions, including *requesting her to engage in sexual acts with him in exchange for rent*.  During this woman's tenancy, Defendant Hames repeatedly came to her home, uninvited and unannounced.  Because the Defendants never installed a lock on the front door of this tenant's home, Defendant Hames entered her home without a key and without permission. Defendants placed an eviction notice on her front door after she rejected Defendant Hames's sexual advances and requested that he repair her front door lock.  After the Defendants evicted this female tenant, Defendant Hames continued to harass her by following her to her new residence for no apparent legitimate reason.

13.   In yet another example, in or around approximately 2011, Defendant Hames made inappropriate sexual advances to another female tenant, *repeatedly telling her that she could keep her money if she engaged in sexual acts with him.*   Defendant Hames also frequently parked his car in the front and back yard of this woman's home, sitting in his vehicle and surveilling her home for extended periods of time; he also peered into the window of this woman's home.

14.   The experiences of these three women were not isolated instances.   Rather, these were part of Defendant Hames's longstanding pattern and practice of illegal sexual harassment of numerous female tenants.

Doc. no. 1 (Complaint), ¶¶ 9-14, at 2-5 (emphasis supplied).

As previously noted, Hames pled "guilty" to four amended charges of "harassment" in violation of Alabama Code § 13A-11-8.  Subsection (a)(1)(b) of that statute states that "[a] person commits the crime of harassment if, with intent to harass, annoy or alarm another person, he or she  . . . [d]irects abusive or obscene language or makes an obscene gesture towards another person."  Subsection (a)(2) further provides that, "[f]or purposes of this section, harassment shall include a threat, verbal or nonverbal, made with the intent to carry out the threat, that would cause a reasonable person who is the target of the threat to fear for his or her safety."[17]

Comparing the allegations of the government's complaint and the conduct the government must prove in order to show that defendants engaged in a "pattern or

---

[17] See note 11, *supra*, for the full text of the Alabama statute defining the crime of "harassment."

practice" of violating the Fair Housing Act to the elements of the crime of "harassment," the court concludes that Hames's plea agreements and resulting pleas of "guilty" are relevant substantive evidence under Rule 401.[18]   In particular, the government alleges that Hames engaged in sexually harassing behavior toward his female tenants — an aspect of which is sexual comments — and he pled guilty to harassment in state criminal proceedings based upon the complaints filed by two of the government's witnesses (*i.e.*, Tomeka Bartlett and Kayla Carreker[19]) and one "aggrieved person" for whom the government seeks compensation in this action (*i.e.*, Doris Marie Watson[20]).   Accordingly, the court finds that Randy Hames's plea agreements filed in the Cullman County, Alabama, Circuit Court Criminal Cases numbered CC-2018-480, CC-2018-481, and CC-2018-482 are relevant under Rule 401.

Even so, the court also must evaluate whether such evidence still might be excluded under Federal Rule of Evidence 403, which provides that:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

---

[18] See note 15, *supra*, for the text of Fed. R. Evid. 401.

[19] See note 1, *supra*.

[20] See note 6, *supra*.

Fed. R. Evid. 403.[21]  Defendants argue that "[t]he jury would likely not be able to separate Hames's harassment convictions as alleged proof of any Fair Housing Act violation."[22]  Defendants' argument, however, confirms the strong probative value of this evidence, as it relates to elements of the government's claims against him.  To be excluded under Rule 403, the evidence must be *unfairly* prejudicial, which defendants have not demonstrated.

For all of the foregoing reasons, the government's document number 206 is GRANTED, and evidence of Randy Hames's plea agreements and resulting pleas of "guilty" in the State criminal cases previously described will be admitted, provided a proper foundation for each is laid.

**B.**     **Document No. 210** — *Government's motion to exclude evidence of Randy Hames's "character," advanced age, and poor health*

### 1.     Testimony of other female tenants' experiences with Hames

The government asks the court to exclude the testimony of five potential witnesses who provided affidavits attesting to their positive interaction with Hames: *i.e.*, Lindsey Hayes; Sonya Newman; Monica LaFont; Rachel Allen; and Autumn Hansen.[23]  Of those five individuals, only the last is listed by defendants as an

---

[21] Defendants did not address the admissibility of Hames's guilty pleas under Rule 801(d)(2)(A), but argued, nevertheless, that admission of those pleas should be barred by Rule 403 as unfairly prejudicial.

[22] Doc. no. 226, at 6.

[23] Doc. no. 150-23.

"optional witness."[24]   Accordingly, the only potential witness whose testimony is

addressed by this motion is Autumn Hansen.  Her affidavit reads as follows:

> My name is Autumn Hansen and I have known Mr. Randy A.
> Hames for over fifteen (15) years.  I have rented from him for five (5)
> years.
>
> During the time I have known Mr. Hames, he has never said
> anything inappropriate and has always been polite.  If I was ever behind
> on my rental payment, he would always allow extra time to make my
> payment.  If my residence was ever in need of maintenance or repairs,
> the repairs were properly made.
>
> I have also worked on and off for three (3) years, between 2010
> until 2013, for Mr. Hames at Hames Law Firm.  Mr. Hames has never,
> in any way, been disrespectful to me.  He was also a great boss.  He also
> represented me in court on many occasions.  He was and still is a great
> lawyer, landlord, and friend.

Doc. no. 150-23, at ECF 2.  The government argues that testimony on such subjects

by Ms. Hansen amounts to "character evidence" prohibited by Federal Rule of

Evidence 404, which provides:

> (a) CHARACTER EVIDENCE.
> (1) *Prohibited Uses*.   Evidence of a person's character or
> character trait is not admissible to prove that on a particular occasion the
> person acted in accordance with the character or trait.
>
> * * * *
>
> (3) *Exceptions for a Witness*.  Evidence of a witness's character
> may be admitted under Rules 607, 608, and 609.

---

[24] *See* doc. no. 211.

(b) OTHER CRIMES, WRONGS, OR ACTS.
    (1) *Prohibited Uses*.  Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

    (2) *Permitted Uses*.  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

                    * * * *

Fed. R. Evid. 404.

The government also argues that such evidence should be excluded because it is not relevant; but, even if deemed relevant, it still should be excluded under Federal Rule of Evidence 403, as the risk of prejudice to the government would outweigh its probative value.[25]

Federal Rule of Evidence 404(a) clearly provides that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."  The government argues that this evidence would be offered to show that, because Hames behaved appropriately toward other female tenants, he did not sexually harass the aggrieved women.  The court agrees that such evidence is not admissible for that purpose.

Defendants also argue, however, that evidence from tenants other than those fourteen individuals on whose behalf the government has sued is relevant to the

---

[25] Rule 403 is quoted in the text preceding note 21, *supra*.

government's "pattern or practice" claim.   While the government need not demonstrate that Hames discriminated against every female tenant in order to prove a "pattern or practice" of such behavior, defendants contend that this evidence is relevant to their rebuttal of the government's claim.   *See, e.g., Terrell v. Richter-Rosin*, No. 94-1458, 1996 WL 122639, at *4 (6th Cir. Mar. 9, 1996).   The court will permit defendants to call Autumn Hansen — the only former tenant identified on defendants' witness list who is not also an aggrieved person — so long as her testimony is not presented for impermissible purposes under Rule 404(a).

## 2.    Testimony Related to Hames's Health Conditions[26]

The government argues that evidence related to Hames's health conditions should be excluded as not relevant; but, even if deemed to be relevant, the evidence still should be excluded under Federal Rule of Evidence 403, because the risk of undue prejudice substantially outweighs its probative value.[27]   Hames now is eighty-one years of age, and testified during deposition that his health was "poor": *that is,* he suffers from high blood pressure, diabetes, and other medical conditions.[28]   Even so, he conceded that his "current or past health conditions" should not be considered

---

[26] The government initially argued that evidence of Hames's age should be excluded, but conceded in its reply that his age "may be relevant in some respects (though not in others)."  Doc. no. 232 (Government's Reply to Motions *in Limine* and Criminal Plea Brief), at 2.

[27] The language of Rule 403 is quoted in the text preceding note 21, *supra*.

[28] Doc. no. 136-2 (Hames dep.), at 20-25.

13

by a jury.[29]  The court agrees that such evidence is  not relevant to the issues in this

case.  *Cf. Hamilton v. Lanier*, 464 F. Supp. 3d 1379, 1382-83 (S.D. Ga. 2020)

(holding that evidence of the deceased defendant's mental condition (dementia) was

directly related to his alleged inappropriate behavior, and its probative value was not

outweighed by potential prejudice).  Accordingly, this aspect of the government's

document number 210 is GRANTED, and evidence of Hames's medical conditions

will be excluded.[30]

**C.**    **Document No. 212** — *Government's motion to exclude character evidence regarding certain witnesses*

The government asks the court to rule on the admissibility of any witness's

criminal history, prior drug use, and the sexual history of any aggrieved person or

private plaintiff.

**1.    Criminal history**

The government requests that the court exclude evidence of any witness's

arrests or charges that did not result in conviction, convictions for misdemeanor

offenses that do not involve false statements or dishonesty, and convictions that

occurred more than ten years prior to trial.  The government also requests that the

---

[29] *Id.* at 22-23.

[30] Doc. no. 232 (Government's Reply to Motions *in Limine* and Criminal Plea Brief), at 2 ("the United States agrees that Hames's age may be relevant in some respects (though not in others), but his other arguments should be rejected, such that the character evidence and testimony about medical conditions should be excluded.").

evidence of any admissible convictions be limited.

### a.      Arrests, or criminal charges not resulting in conviction

The government first argues that a witness's *arrests*, or *criminal charges not resulting in a conviction*, are impermissible subjects of inquiry.  That clearly is correct, as the former Fifth Circuit observed in a case that still is binding precedent in this Circuit:

> The general rule, consistently applied in this Circuit, is that normally the mere existence of an arrest in not admissible to impeach the defendant's credibility.  The rationale for this rule is simple.  Under our constitutional scheme a defendant is presumed innocent until proven guilty, and therefore, an arrest, without more, is quite consistent with innocence and yet its mention may prejudice the jury against defendant.

*United States v. Labarbera*, 581 F.2d 107, 108-09 (5th Cir. 1978) (citations omitted).[31]  As such, this aspect of the government's document number 212 is GRANTED, and defendants will not be permitted to inquire about any witness's arrests, or criminal charges that did not result in conviction.  *See Michelson v. United States*, 335 U.S. 469, 482 (1948) ("Arrest without more does not, in law any more than reason, impeach the integrity or impair the credibility of a witness.  It happens to the innocent as well as the guilty.  Only a conviction, therefore, may be inquired about to undermine the trustworthiness of a witness."); *see also Schware v. Board of*

---

[31] See note 16, *supra*.

*Bar Examiners of State of New Mexico*, 353 U.S. 232, 242 n.6 (1957) ("Arrest, by itself, is not considered competent evidence at either a criminal or a civil trial to prove that a person did certain prohibited acts.").

### b.    Convictions of crime

The circumstances in which *convictions* are admissible are limited by Federal Rule of Evidence 609(a), quoted in note 14, *supra*.

The government asks the court to prohibit defendants from introducing evidence relating to a misdemeanor conviction of an aggrieved person or private plaintiff, unless the crime of which the individual was convicted plainly involved dishonesty or a false statement. That requested prohibition tracks the language of Rule 609(a)(2). Accordingly, that aspect of the government's document number 212 is GRANTED; and, absent a showing by defendants of the deceitful nature of the crime, such evidence will be excluded. *See* Fed. R. Evid. 609, Adv. Comm. Notes to 2006 Amend. (observing that, in such circumstances, the proponent "may offer information such as an indictment, a statement of admitted facts, or jury instructions to show that the factfinder had to find, or the defendant had to admit, an act of dishonesty or false statement in order for the witness to have been convicted").

Additionally, the government asks the court to exclude evidence of convictions if more than ten years have passed since the witness's conviction or release from

confinement.  That is black letter law under Rule 609, which provides that:

> (b) LIMIT ON USING THE EVIDENCE AFTER 10 YEARS.  This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later.  Evidence of the conviction is admissible only if:
>
> > (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and
> >
> > (2) the proponent give an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

Fed. R. Evid. 609(b).  That Rule places the burden upon the proponent of such evidence to provide "reasonable written notice" of intent to use such evidence, "so that the [opposing] party has a fair opportunity to contest its use."  No such notice has been provided.  Accordingly, this aspect of government's document number 212 is GRANTED, and defendants are prohibited from offering any evidence of a witness's or aggrieved person's conviction of a crime if "more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later."  Fed. R. Evid. 609(b).

Finally, the government asks the court to limit inquiry into criminal convictions that are admissible under Rule 609(a)(1)(A).[32]  The government provided no context to enable the court make a ruling.  Accordingly, this aspect of the motion is DENIED,

---

[32] See note 14, *supra*, for the text of Rule 609(a)(1)(A).

without prejudice to the parties' ability to raise objections in the context of trial.

## 2. Past Drug Use

Defendants do not contest the government's proposition that evidence of past drug use is not admissible, *unless* it should be relevant to a witness's ability to perceive the events at issue, or impair a witness's ability to testify at trial.[33]   *See United States v. Sellers*, 906 F.2d 597, 602 (11th Cir. 1990).   Accordingly, this aspect of the government's document number 212 also is GRANTED, and defendants are prohibited from asking any witness about past drug use.

## 3. Sexual History

Federal Rule of Evidence 412 bars evidence of other sexual behavior of an alleged victim of sexual misconduct.   The rule provides:

> (a) PROHIBITED USES.   The following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct:
>
> > (1) evidence offered to prove that a victim engaged in other sexual behavior; or
> >
> > (2) evidence offered to prove a victim's sexual predisposition.

Fed. R. Evid. 412(a).   Rule 412(b) allows such evidence in civil cases only if "its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party."   Fed. R. Evid. 412(b).   A party seeking to invoke that

---

[33] Doc. no. 224, at 3-4.

subsection must file a motion describing the evidence and stating the purpose for which it is to be offered.  Fed. R. Evid. 412(c).  Defendants have not filed such a motion, and, accordingly, this aspect of the government's document number 212 is GRANTED.

To the extent that defendants seek to elicit testimony which may *indirectly* implicate a witness's sexual history — *e.g.*, a witness's romantic relationships during her tenancy at Hames Marina, or the paternity of a witness's child — they first must request an *in camera* hearing on the purpose and relevance of the inquiry.

**D.    Document Nos. 209, 213, and 214** — *The parties' pleadings relating to the admissibility of financial information*

Two of the government's motions[34] and one aspect of defendants' omnibus motion *in limine*[35] relate to the admissibility of Hames's financial information.  The issues are related and will be addressed together.

As an initial matter, defendants contend that evidence of Hames's wealth should be excluded as not relevant to the government's claims.  While not explicitly conceding that financial information is relevant to the government's claim for punitive damages, defendants ask the court to bifurcate the liability and damages

---

[34] Doc. no. 209 (United States' Motion *in Limine* to Admit Evidence of Defendant Randy Hames's Fraudulent Transfers); doc. no. 214 (United States' Motion *in Limine* to Deem Certain Summary Charts Admissible at Trial).

[35] Doc.  no. 213 (Defendant Randy Hames and Hames Marina d/b/a Hames Marina and Mobile Home Park's Motion *in Limine*), § 1 ("Wealth"), at 1-3.

phases of the trial under Federal Rule of Civil Procedure 42(b), thereby allowing

punitive damages to be addressed only if liability is established in the first phase of

trial.[36]    The government argues that defendants' request for bifurcation is

inappropriately raised in a motion *in limine*, untimely, and unwarranted.

This court already has held that Hames's financial information is relevant to

the government's claim for punitive damages, and also to the court's determination

of a civil penalty, if warranted.  Specifically, on March 17, 2020, this court entered

an order compelling defendants to provide to the government Hames's financial

information requested in discovery, stating:

> Defendants' financial information and net worth is indeed
> relevant to the United States' claim for punitive damages, and its
> admissibility is firmly established under federal law.  *See City of
> Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270 (1981); *Wilson v.
> Gillis Advert. Co.*, 145 F.R.D. 578, 580 (N.D. Ala. 1993).  Defendants'
> financial information is also relevant to the government's determination
> of an appropriate civil penalty.  *See* H.R. Rep. No. 711, 100th Cong., 2d
> Sess. 40 ("When determining the amount of a penalty against a
> defendant the court should consider . . . the financial circumstances of
> that defendant.")  *Sec'y, U.S. Department of Housing & Urban
> Development v. Blackwell*, 908 F.2d 864, 874 (11th Cir. 1990)
> (affirming maximum penalty where defendant submitted no evidence of
> net worth to mitigate the award).

Doc. no. 45.  Accordingly, defendants' request to exclude evidence of Hames's net

---

[36] *Id*. at 1-2; doc. no. 221 (Defendants Randy Hames and Hames Marina d/b/a Hames Marina and Mobile Home Park Response and Objections to USA's Motion to Admit Fraudulent Transfers (Doc. 209), USA's Motion to Admit Financial Charts (doc. no. 214), and USA Exhibits 41-56).

worth is DENIED.

Turning to defendants' belated, implied request to bifurcate the trial, Federal Rule of Civil Procedure 42(b) provides, in relevant part: "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims or third-party claims." Defendants bear the burden of proving that bifurcation will satisfy the objective of the rule, and that it is warranted in a particular case.  *See Home Elevators, Inc. v. Millar Elevator Service Co.*, 933 F. Supp. 1090, 1091 (N.D. Ga. 1996).

Defendants argue only that bifurcation is necessary to prevent unfair prejudice, but fail to specify how they would be prejudiced by addressing all of the issues in one trial.  Defendants' broad, conclusory statement does not justify bifurcation of the trial, particularly at this exceedingly late date.  Moreover, bifurcation would not serve the interests of expediency or economy.  Any prejudice to defendants may be minimized by a limiting instruction to the jury.  As such, defendants' request to bifurcate the punitive damages portion of the trial is DENIED.[37]

---

[37] Defendants also suggest, in a footnote, that a special verdict form be used.  Doc. no. 213, at 2 n.1.  However, the time for such a suggestion has long passed, as the deadline for defendants' submission of proposed jury instructions and verdict form was July 14, 2023.  *See* doc. no. 196. Defendants did not submit a proposed verdict form, and their only objection to the government's proposed verdict form was that it did not distinguish between compensatory and punitive damages. Doc. no. 201 (Defendants Randy Hames and Hames Marina d/b/a Hames Marina and Mobile Home Park Objections to United States' Proposed Jury Instructions), at 5, ¶ 6.

Apart from asserting that evidence of Hames's net worth should be excluded in its entirety, defendants do not challenge the admissibility of evidence that Hames fraudulently transferred real property and cash assets. Accordingly, document number 209, the government's motion *in limine* on that issue, is GRANTED. Likewise, defendants do not specifically contest the admissibility of charts summarizing Hames's net worth in 2018 and at present, or the propriety of the court taking judicial notice of the government sources forming the basis of the charts.[38] The court concludes that the proposed summary charts comply with Federal Rule of Evidence 1006,[39] provided that the government presents a witness to supply a foundation for their admission. Additionally, the court will take judicial notice of government sources used to create the charts, in the event the charts are offered into evidence.

E.   **Document No. 213** — *Defendants' omnibus motion in limine*

Defendants' omnibus motion *in limine* seeks exclusion of eleven categories of

---

[38] Doc. no. 214.

[39] Rule 1006 provides:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writing, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

evidence,[40] but the government contests only the following categories.[41]

## 1.    Wealth

The admissibility of evidence of Hames's net worth has already been addressed.  Defendants also seek to exclude evidence of the financial circumstances of the aggrieved persons as irrelevant.  The government contends that evidence of the aggrieved persons' financial circumstances at the time that they interacted with Hames is relevant to allegations that Hames demanded sexual favors in order for the female tenants to obtain or retain housing, offered tangible housing benefits (such as reduced rent payments or deposit amounts, or excusing late payment fees) in exchange for sexual favors, and took adverse housing actions (such as evicting, or threatening to evict the tenants, or failing to make repairs to their trailers or appliances) if the female tenants objected to or refused his sexual advances.  The government contends that "[t]hese allegations, and the expected testimony that Hames sought to take advantage of tenants' financial circumstances as part of his pattern or practice of sexual harassment, demonstrate that this evidence is directly relevant to

---

[40] Doc. no. 213.

[41] The government does not challenge the exclusion of Hames's present romantic relationship with Karrie Martin; a "protection from abuse" petition filed against Randy Hames by Laquita Caldwell; a bar complaint filed against Champ Crocker, former counsel for private plaintiffs Tomeka Bartlett and Kayla Carreker in related civil action number 5:18-cv-1093-CLS; the fact that Kayla Carreker's son is autistic; allegations that Hames followed Bartlett and Carreker to a women's shelter; and, statements by Edith Herring to Kayla Carreker that other tenants had been harassed by Hames.

the issues in this case."[42]  The court agrees, and this aspect of defendants' motion, seeking exclusion of such evidence, is DENIED.

### 2. Hames's past romantic relationships with tenants

Defendants seek to exclude testimony regarding Hames's romantic relationships with tenants Lindsey Hayes and Susan Pieschel, the latter of whom also was employed by Hames as a legal secretary.  **Note well**:  Neither individual is named on the witness list filed by either the government or defendants.  Therefore, the court fails to perceive an issue that requires a ruling.

### 3. Police reports and Hames's refusal to submit to a polygraph examination

Defendants seek to exclude police reports relating to Karanda Gann and Brittaney Lands, on the basis that statements contained within the reports are inadmissible hearsay.  The government asks, to the extent defendants seek to exclude the reports in their entirety, that the court reserve ruling on defendants' request, noting that police reports and statements contained therein may be admissible, depending upon the circumstances in which they are sought to be introduced.

Relatedly, defendants ask the court to exclude evidence that Hames refused to submit to a polygraph examination in connection with the complaint of harassment

---

[42] Doc. no. 219 (Plaintiff United States' Response to Defendants' Motion *in Limine*), at 4.

filed with the Cullman County Sheriff by Brittaney Lands on May 8, 2015. The written report filed by the investigating officer stated that, on May 13, 2015, he offered both Ms. Lands and Mr. Hames an opportunity to take a polygraph exam, "but Mr. Hames seemed apprehensive about taking one."[43]   Randy Hames later testified in his deposition that he declined to submit to a polygraph examination because he did not believe that they were scientifically reliable, or admissible in court.[44]

The government responds that it does not intend to introduce evidence that Hames refused to submit to a polygraph examination.  Even so, the government argues that the report itself contains other relevant statements that may be admissible.

In view of the foregoing, defendants' motion to exclude the reports in their entirety is DENIED, but with this proviso:  that portion of the investigative report generated in connection with Brittaney Lands's complaint of harassment which references Hames's refusal to submit to a polygraph examination will be excluded. The parties may raise specific objections in the context of trial to the remainder of that report, and the investigative report generated by Karanda Gann's complaint.

---

[43] Doc. no. 213, at 3-4.

[44] Doc. no. 136-1 (Hames dep.), at 398-99.

DONE and ORDERED this 25th day of January, 2024.

_____

Senior United States District Judge